# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

WORD OF FAITH CHRISTIAN
CENTER CHURCH, a Michigan
Ecclesiastical Corporation;
KEITH BUTLER, an Individual and
Bishop of WOFCCC; TIM SCHMIG,
D.Litt., an Individual; WHOLE LIFE
CHURCH, a Michigan Ecclesiastical
Corporation; CHUCK VIZTHUM,
an Individual and Pastor of Whole
Life Church, NORTHERN MICHIGAN
BAPTIST BIBLE CHURCH, a Michigan
Non-Profit Corporation; STANLEY
CHATFIELD, III, an Individual and
Pastor of NMBBC,

**VERIFIED COMPLAINT**

**FILE NO.:**

               **Plaintiffs,**

-vs-

GRETCHEN WHITMER, Governor
of the State of Michigan,

               **Defendant.**

_____/

| | |
|---|---|
| David A. Kallman **(P34200)** | Tracey Lee **(P52444)** |
| Stephen P. Kallman **(P75622)** | **Attorney for Plaintiffs** |
| Jack C. Jordan **(P46551)** | **WOFCCC and Keith Butler** |
| Erin Mersino **(P70886)** | **20000 W. Nine Mile Rd.** |
| GREAT LAKES JUSTICE CENTER | **Southfield, MI  48075** |
| **Attorneys for Plaintiffs** | **Phone: (248) 353-3476** |
| **5600 W. Mount Hope Hwy.** | |
| **Lansing, MI 48917** | |
| **Phone: (517) 322-3207** | |

**NOW COME** the above-named Plaintiffs, by and through their undersigned counsel, and together bring this Verified Complaint against the above-named Defendant, her agents, and successors in office, and in support thereof allege the following upon information and belief:

## **INTRODUCTION**

1.     The First Amendment protects Plaintiffs' free exercise of religion and the freedom to assemble against unwarranted government intrusion (U.S. Const., Am. I).

2.     The Michigan Constitution also protects the religious rights of the people and the freedom to associate and assemble against unwarranted government intrusion (Const. 1963, art. I, §§ 3, 4, and 5).

3.     Another foundational core of our Constitutional Republic is that the true meaning of the Separation of Powers Doctrine is that the whole power of one of the branches of government should not be exercised by the same hands which possess the whole power of either of the other departments, and that such exercise of the whole would subvert the principles of a free Constitution (Const. 1963, art. III, § 2).

4.     Both the United States and Michigan Constitutions protect Plaintiffs' rights to due process under the law (U.S. Const., Am. XIV; Const. 1963, art. I, § 17).

2

5.     This complaint arises because Defendant unilaterally, without legal authority, and without the statutorily required extension approval from the Michigan Legislature, issued numerous Executive Orders (EO) on April 30, 2020 and May 1, 2020 (EOs 2020-65 through 71).

6.     Paragraph 2 of EO 2020-70 specifically states, "all individuals currently living within the State of Michigan are ordered to stay at home or at their place of residence. … all public and private gatherings of any number of people occurring among persons not part of a single household are prohibited."

7.     EO 2020-70 continues to prohibit gatherings of two or more individuals, including at churches, thereby denying them the ability to hold worship services and otherwise carry out their ministry functions until May 28, 2020.

8.     While EO 2020-70 states that "neither a place of religious worship nor its owner is subject to penalty under section 20 of this order for allowing religious worship at such place," nothing in this provision applies to *individuals* attending a place or worship as clergy or congregants and does not apply to Plaintiffs.

9.     A promise to not subject a geographic location or its "owner" to the criminal penalty under EO 2020-70 merely adorns the constitution with a fig leaf and does not protect individuals or change the clear language of the order prohibiting any religious services or other ministry functions at a church or religious

organization.

10.     Relevant to this lawsuit, none of Defendant's exceptions to the stay-at-home order listed in EO 2020-70 apply to Plaintiffs.

11.     Plaintiffs are entitled to a declaratory ruling and injunctive relief to protect their constitutional and statutory rights to meet and otherwise freely exercise their religious conscience.

12.     This case seeks to protect and vindicate statutory and fundamental constitutional rights. Plaintiffs bring this civil rights action under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for other statutory and constitutional violations, challenging Defendant's EOs, acts, policies, and regulations which deprive Plaintiffs of their rights.

13.     As set forth in this Complaint, Defendant's EOs, acts, policies, and regulations are the cause of, and the moving force behind, the statutory and constitutional violations in this case.

14.     Plaintiffs bring this action for these express purposes:

A.     for a declaration that Defendant's EOs, acts, policies, and regulations since April 30, 2020, are unconstitutional and violate clearly established laws;

B.     for a declaration that the Emergency Powers Act and the Emergency

Management Act are unconstitutional, both facially and as applied;

C.    for injunctive relief prohibiting enforcement of the EOs referenced above, including issuance of any future EOs decreed by Defendant without Legislative approval; and

D.    for an award of Plaintiffs' reasonable costs of litigation, including attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and other applicable law.

## JURISDICTION AND VENUE

15.    This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 1983 and 1988, and other Federal and State laws and regulations, to redress violations of federal statutes and state law.

16.    This Honorable Court has jurisdiction pursuant to Article III of the United States Constitution, 28 U.S.C. §1331 and 28 U.S.C. §1343. Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

17.    This Honorable Court has supplemental jurisdiction regarding the remaining state claims pursuant to 28 U.S.C. § 1367, because the state claims arise out of the same nexus of facts and events.

18.    Plaintiffs' claims for declaratory and injunctive relief are authorized by

28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Honorable Court.

19.     Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to Plaintiffs' claims occurred in the state of Michigan. Further, Defendant and her office are located in Lansing, Ingham County, Michigan which is in the United States District Court, Western District of Michigan.

## **PARTIES**

20.     Word of Faith Christian Center Church (WOFCCC) is a Michigan non-profit corporation located in Southfield, Michigan and is a church that operates Christian churches and Bible Training Centers throughout the United States, States, Africa, Europe, as well as Michigan. WOFCCC has continuously operated as a Christian church since 1979.

21.     Bishop Keith Butler is a Christian individual who resides in Oakland County, State of Michigan and is the pastor of WOFCCC.

22.     Dr. Tim Schmig is a Christian individual who resides in Shiawassee County, State of Michigan.

23.     Whole Life Church is a Michigan ecclesiastical corporation located in St. Joseph County, State of Michigan, and has operated as a Christian church since 1995.

24.     Pastor Chuck Vizthum is a Christian individual who resides in St. Joseph County, State of Michigan and is the pastor of Whole Life Church.

25.     Northern Michigan Baptist Bible Church is a Michigan non-profit corporation located in Cheboygan County, State of Michigan, and has operated as a Christian church since 1955.

26.     Stanley Chatfield, III is a Christian individual who resides in Cheboygan County, State of Michigan and is the pastor of Norther Michigan Baptist Bible Church.

27.     All Plaintiffs are located in the State of Michigan and are subject to the prohibitions and penalties contained in Defendant's EOs.

28.     Gretchen Whitmer is the duly elected Governor of the State of Michigan and is being sued solely in her capacity as governor.

## GENERAL ALLEGATIONS

29.     An actual and present controversy exists between the parties.

30.     The issues raised in this Complaint are not rendered moot if any emergency EOs are removed, modified, or rescinded before the Court issues a final judgment.  The issues presented are capable of repetition and must not be permitted to evade judicial review.

31.     In response to the COVID-19 virus pandemic, Defendant declared a

7

state of emergency on March 10, 2020 (EO 2020-4), pursuant to MCL 30.403 and MCL 10.31, and subsequently issued, through April 30, 2020, an additional sixty EOs.

32.    Once a governor declares a state of emergency or disaster, MCL 30.403(3 and 4) grants Defendant the exclusive authority to issue EOs for 28 days without legislative approval.

33.    After 28 days, Defendant is required to obtain approval from the Legislature to extend the state of emergency and any EOs issued pursuant to the emergency.

34.    Defendant requested an extension from the Legislature and on April 7, 2020, she was granted an extension of the state of emergency through April 30, 2020.

35.    On April 24, 2020, Defendant issued several EOs without legislative approval that were set to expire on May 15, 2020, a date beyond the extension previously granted by the Legislature.

36.    Defendant unilaterally asserted that these new EOs were effective through May 15, 2020, despite the lack of the statutorily required Legislative extension to that date.

37.    On April 30, 2020, the Legislature refused to extend the state of emergency.

38.     Because no extension was granted by the Legislature, Defendant had a clear legal duty and was expressly required by MCL 30.403 to "issue an Executive Order or proclamation declaring the state of emergency terminated."

39.     Defendant issued EO 2020-66 rescinding her prior declarations of a state of emergency and state of disaster.

40.     However, without any statutory or constitutional authority, Defendant immediately thereafter decreed, and is now attempting to enforce, new EOs issued unilaterally on and after April 30, 2020.

41.     Despite the Legislature's refusal to extend the state of emergency, Defendant is now enforcing illegal and unauthorized EOs.

42.     All citizens and churches in Michigan are subject to the requirements and penalties of Defendant's unlawful EOs.

43.     Without legislative approval, Defendant does not have authority to issue or enforce any emergency EOs after April 30, 2020.

44.     Defendant's unlawful actions enforced under color of state law violate Plaintiffs' rights.

45.     If Plaintiffs' requested relief is not granted, then they are subject to the criminal penalties imposed by Defendant's EOs and to the continued violation of their First Amendment and Michigan Constitutional rights to freely exercise their

religious beliefs and to freely associate and assemble.

46.    Beginning in May 2020, Plaintiff WOFCCC plans to hold in-person church services in addition to maintaining its live-stream options.

47.    In WOFCCC's 4,000 seat auditorium and using safety precautions, such as holding multiple services that will allow six-feet distancing between individuals and families, requiring masks and gloves to be worn, and utilizing other safety measures for physical distancing, they plan to hold each in-person service with a worship team, band, choir, pastor, congregants, employees, and volunteers. For the foreseeable future, Plaintiff's safety plan includes, but is not limited to, the following precautions:

A.    Prior to and following the in-person service, the facility will be deep cleaned;

B.    Individuals will be advised that services will continue to be live-streamed to allow them to stay at home in order to virtually attend services;

C.    Attendees will be advised to perform temperature checks at home on all attendees prior to attending service. Individuals that are ill or have fevers are not to attend;

D.    High-risk individuals will be advised not to attend the in-person

service;

E.     Attendees will be advised to bring their own masks;

F.     Attendees will be advised not to engage in hand shaking or other physical contact;

G.     Hand sanitizer will be available for use throughout the facility;

H.     The in-person service will be limited to 600 individuals in a space that has a capacity for 4000 individuals;

I.     Co-habitating family units may sit closer together, but otherwise physical distancing will be used;

J.     Reduced points of entry and exits will be implemented;

K.     Ventilation will be increased as much as possible, opening windows and doors, as weather permits;

L.     These procedures will be communicated to church members in advance of services; and

M.     Offering plates will not be passed down the aisles during services.

48.     Beginning in May 2020, Plaintiffs Whole Life Church and Northern Michigan Baptist Bible Church also plan to hold in-person church services, in addition to maintaining its live-stream options, based upon similar protocols as listed above.

11

49.     Beginning in May 2020, all individual Plaintiffs plan to attend in-person church services at their church, based upon similar protocols as listed above.

## COUNT I - FREE EXERCISE OF RELIGION
## (First Amendment; 42 U.S.C. § 1983)

50.     Plaintiffs hereby incorporate by reference paragraphs 1 through 49 as if fully restated herein.

51.     Under the Free Exercise Clause of the First Amendment of the U.S. Constitution, government must not make a law "prohibiting the free exercise" of religion.

52.     By reason of the aforementioned unlawful actions of Defendant being enforced under color of state law, Defendant substantially interfered with and deprived Plaintiffs of their right to the free exercise of religion in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

53.     By prohibiting and punishing Plaintiffs' gathering for their religious services to exercise their religious conscience and beliefs, Defendant violates Plaintiffs' First Amendment right to the free exercise of religion.

54.     Defendant's conduct violates Plaintiffs' constitutional right to the free exercise of religion. Plaintiffs' compliance with their sincerely held religious beliefs is a religious exercise.

12

55.    Defendant's actions injure Plaintiffs by violating their constitutional rights through threat of prosecution and sanction by the state for failure to comply with Defendant's new EOs.

56.    Defendant's Executive Orders, acts, policies, and regulations further no compelling governmental interest.

57.    Defendants' Executive Orders, acts, policies, and regulations fail to provide the least restrictive means of furthering any state interest and are not narrowly tailored.

58.    Defendant's EOs are not neutral or generally applicable as they deny Plaintiffs the ability to join together in-person to engage in prayer and to discuss religious matters, while at the same time providing other individuals or entities the ability to meet regarding non-religious matters.

59.    Defendant's EOs are not generally applicable because they grant local authorities unbridled discretion, enforced via an individualized subjective assessment, to prohibit Plaintiff's religious exercise while permitting other individuals or entities to engage in non-religious practices.

60.    As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered, and will continue to suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to

declaratory and injunctive relief.

## COUNT II – FREEDOM OF EXPRESSION /ASSOCIATION/ASSEMBLY (First Amendment; 42 U.S.C. § 1983)

61. Plaintiffs hereby incorporate by reference paragraphs 1 through 60 as if fully restated herein.

62. The First Amendment to the U.S. Constitution prohibits government laws that abridge the right to freedom of expression, association, and assembly.

63. Plaintiffs are like-minded Christians, who engage in expressive association and assemblies, and they desire to engage in religious expression and activities.

64. By reason of the aforementioned unlawful actions of Defendant being enforced under color of state law, Defendant substantially interfered with and deprived Plaintiffs of their right to freedom of expression/association/assembly in violation of the First Amendment, as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

65. By punishing Plaintiffs' expression, association, and assembly, Defendant violates Plaintiffs' First Amendment rights by denying them the right to meet and freely express their religious beliefs.

66. Defendant's actions injure Plaintiffs by violating their constitutional

14

rights through threat of prosecution and sanction by the state for failure to comply with Defendant's new EOs.

67.     Defendant's Executive Orders, acts, policies, and regulations further no compelling governmental interest.

68.     Defendants' Executive Orders, acts, policies, and regulations fail to provide the least restrictive means of furthering any State interest and are not narrowly tailored.

69.     As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered, and will continue to suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

### COUNT III – PROCEDURAL DUE PROCESS
### (Fourteenth Amendment; 42 U.S.C. § 1983; Michigan Constitution)

70.     Plaintiffs hereby incorporate by reference paragraphs 1 through 69 as if fully restated herein.

71.     The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Am. XIV. The Michigan Due Process Clause also protects Plaintiffs' rights. Const. 1963, art I, § 17.

72.     The Due Process Clause prohibits the State from depriving Plaintiffs of

liberty interests without providing process before or after the deprivation occurred.

73.    Plaintiffs have liberty interests protected by the Due Process Clause as outlined above.

74.    Defendant deprived Plaintiffs of these protected interests.

75.    Defendant did not afford Plaintiffs adequate procedural rights before or after the depravation.

76.    Plaintiffs have a protected liberty interest in the right to live without arbitrary governmental interference with their liberty interests.

77.    Plaintiffs' liberty interest includes the ability to worship God according to the dictates of their own consciences.

78.    The EOs substantially infringed, and continue to substantially infringe upon, Plaintiffs' liberty interests including:

A.    First Amendment right to the free exercise of religion;

B.    First Amendment right to engage in expression/association/assembly, including the ability to attend church, visit fellow Christians, and engage in communal worship; and

C.    the right to engage in intrastate travel to visit family and friends, to go to church, and to meet with fellow Christians.

79.    Defendant failed to provide any procedural due process before issuing

16

her EOs, nor do the EOs provide any mechanism for post-deprivation review.

80.     Plaintiffs assert that Defendant's EOs are unconstitutionally vague under the void-for-vagueness doctrine pursuant to the Due Process Clauses of Fourteenth Amendment of the U.S. Constitution and Article I, Section 17 of the Michigan Constitution.

81.     Criminal laws must be written with sufficient precision and clarity so that ordinary people can understand what conduct is prohibited.

82.     The law must be written in a way that discourages arbitrary, capricious, or discriminatory enforcement.

83.     Defendant's emergency EOs state that they carry the force of law and a willful violation of the EOs is punishable as a crime.

84.     No reasonable person can read these EOs and properly understand what conduct is or is not prohibited.

85.     As a direct and proximate cause of the failure to provide any pre- or post-deprivation process and because the EOs are void for vagueness, Plaintiffs have suffered and are suffering prejudice from the aforementioned infringements on their liberty interests under threat of criminal and civil sanctions.

86.     Plaintiffs seek a declaratory judgment that Defendants' EOs are unlawful and further request an injunction against future infringements of their

rights.

## COUNT IV – SUBSTANTIVE DUE PROCESS
## (Fourteenth Amendment; 42 U.S.C. § 1983; Michigan Constitution)

87.     Plaintiffs hereby incorporate by reference paragraphs 1 through 86 as if fully restated herein.

88.     The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deprive any person of life, liberty, or property, without due process of law." U.S. Const., Am. XIV. The Michigan Due Process Clause also protects Plaintiffs' rights. Const. 1963, art I, § 17.

89.     The substantive component of the Due Process Clause prohibits the state from acting in a manner that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.

90.     Defendant's EOs shock the conscience, and they have interfered, and continue to interfere, with the liberty interests described in this Complaint.

91.     Plaintiffs have protected a liberty interest in the right to live without arbitrary governmental interference with their liberty interests.

92.     Liberty denotes not merely freedom from bodily restraint but also the right to worship God according to the dictates of their own consciences.

93.     Defendant's conduct deprives Plaintiffs of their liberty to worship God according to the dictates of their own consciences.

94.     Defendant's conduct deprives Plaintiffs of their personal choices central to individual dignity and autonomy, including intimate choices defining personal identity and beliefs by stigmatizing religious exercise of those beliefs as non-essential and a violation of State law.

95.     Defendant's EOs are not narrowly tailored to achieve a compelling governmental interest.

96.     As a direct and proximate result of Defendant's violation of the Due Process Clause, Plaintiffs have suffered, and will continue to suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

## COUNT V – GUARANTEE CLAUSE
## (42 U.S.C. § 1983)

97.     Plaintiffs hereby incorporate by reference paragraphs 1 through 96 as if fully restated herein.

98.     Under the Guarantee Clause of Article IV, Section 4 of the U.S. Constitution, "[t]he United States shall guarantee to every State in this Union a Republican Form of Government." The essence of a republican form of government is self-government through elected representatives.

99.     The people of Michigan adopted a republican form of government with the adoption of the Michigan Constitution of 1963, which vested all legislative

powers in the Legislature. Through the Legislature, the people of Michigan engage in self-government by their elected representatives. Const. 1963, art. III, § 2; Const. 1963, art. IV, § 1.

100.   Defendant decreed and issued new EOs under the 1945 Emergency Powers Act and the 1976 Emergency Management Act, claiming absolute, unchecked power to govern by executive edict.

101.   Nothing in the U.S. Constitution authorizes a state governor to suspend constitutional representative governance by declaring new emergencies every 28 days into perpetuity.

102.   Allowing one person to wield absolute power is not a republican form of government, it is tyranny.

103.   Plaintiffs contend that Defendant's EOs violate the Guarantee Clause of Article IV, Section 4 of the U.S. Constitution because they deprive all Michigan citizens of a republican form of government.

104.   Plaintiffs seek a declaration that Defendant's emergency EOs violate the Guarantee Clause, and Plaintiffs are entitled to an injunction against enforcement of these EOs or issuance of any future emergency EOs.

### COUNT VI – SEPARATION OF POWERS
### Michigan Constitution

105.   Plaintiffs hereby incorporate by reference paragraphs 1 through 104 as

if fully restated herein.

106. Defendant's EOs are invalid because they violate the Separation of Powers Clause in Article III, Section 2 of the Michigan Constitution.

107. The Separation of Powers Clause provides that "[t]he powers of government are divided into three branches: legislative, executive, and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Const. 1963, art. III, § 2.

108. The 1945 Emergency Powers Act violates the Separation of Powers Clause on its face and as Defendant has applied it because it grants a governor absolute legislative power whenever a governor asserts the existence of an emergency.

109. The 1976 Emergency Management Act violates the Separation of Powers Clause on its face and as Defendant has applied it to give herself limitless, unchecked emergency powers.

110. The Michigan Constitution does not permit the Legislature to delegate through either Emergency Act such unlimited powers to a governor.

111. Defendant's EOs are an exercise of lawmaking, not executive authority.

112. Defendant's unilateral and unauthorized extension of the state of

emergency renders every emergency EO issued after April 30, 2020 as an exercise of lawmaking authority that properly belongs to the Legislature.

113. Just because a governor has ink in her pen does not mean the Constitution authorizes her to use it, notwithstanding good intentions. The Constitution does not become irrelevant during any emergency, including a pandemic. Instead of every citizen being subject to the rule of law, they have become subjects of Defendant's daily edicts.

114. Defendant has unilaterally governed by decree since March 10, 2020.

115. Plaintiffs seek a declaration that Defendant's emergency EOs violate the Separation of Powers Clause, and Plaintiffs are entitled to an injunction against enforcement of these EOs or issuance of any future emergency EOs.

### COUNT VII – MICHIGAN STATUTORY VIOLATIONS
### MCL 10.31 et. seq., MCL 30.401 et. seq.

116. Plaintiffs hereby incorporate by reference paragraphs 1 through 115 as if fully restated herein.

117. Since the EOs have been in place, Plaintiffs desired and still desire to gather in-person with others to exercise their right to free speech, free exercise of religion, and right of association.

118. The EOs prohibited Plaintiffs from engaging in these activities under threat of civil and criminal penalty. Several of these activities are still prohibited or

severely curtailed under the versions of the EOs in effect as of the date of this Complaint.

119. MCL 10.31 et. seq. and MCL 30.401 et. seq. are one statutory scheme which must be read together as one law.

120. Assuming, *arguendo,* the 1945 Emergency Powers Act and the 1976 Emergency Management Act are not unconstitutional, Plaintiffs contend that Defendant lacks authority to issue COVID-19 emergency EOs after April 30, 2020 for the following reasons:

A. The 1945 Emergency Powers Act only applies to "safety" emergencies, not "health" related epidemic emergencies. All of Defendant's emergency EOs only apply to a "health" emergency due to COVID-19.

B. The 1976 Emergency Management Act does pertain to "health" issues and epidemics, but Defendant's authority to issue EOs under this provision ended on April 30, 2020. Because the Michigan Legislature did not extend the state of emergency past April 30, 2020, Defendant unlawfully, unilaterally, without legal authority, and without statutorily required legislative approval, issued numerous EOs on and after April 30, 2020.

C. All of Defendant's EOs issued under the COVID-19 emergency are no

23

longer valid and are void because the emergency was not extended by the Michigan Legislature.

D.    Michigan law (MCL 10.31) requires that all emergency EOs be reasonable; however, Defendant's statewide EOs are not reasonable given the current status of the COVID-19 epidemic and its disparate impact throughout the state.

121.   Defendant cannot defy the Michigan Legislature's denial of an extension of the COVID-19 state of emergency in order to justify the unlawful use of emergency powers.

122.   Defendant acknowledged the requirement of obtaining an extension of the state of emergency from the Legislature after 28 days, because she requested, and was granted, just such an extension on April 7, 2020.

123.   Plaintiffs seek a declaration that Defendant's emergency EOs violate MCL 10.31 et. seq. and MCL 30.401 et. seq, and Plaintiffs are entitled to an injunction against enforcement of these EOs or issuance of any future emergency EOs without legislative approval.

## COUNT VIII – MICHIGAN CONSTITUTIONAL VIOLATIONS

124.   Plaintiffs hereby incorporate by reference paragraphs 1 through 123 as if fully restated herein.

125.   By reason of the aforementioned unlawful actions of Defendant being enforced under color of state law, Defendant deprived Plaintiffs of their rights under Michigan's Constitution of 1963 as follows:

A.   **Article I, § 4, Freedom of Worship and Religious Belief.** Defendant's EOs, for all the reasons as stated above, deny Plaintiffs the right and "liberty to worship God according to the dictates of his own conscience," and further "diminishes the civil and political rights, privileges and capacities" of Plaintiffs on account of their religious belief.

B.   **Article I, §§ 3 and 5, Freedom of Speech and Assembly**. Defendant's EOs, for all the reasons as stated above, restrain or abridge Plaintiffs' liberty of speech and assembly.

126.   Defendant's emergency EOs injure Plaintiffs by violating their constitutional rights through threat of prosecution and sanction by the state for failure to comply with Defendant's emergency EOs.

127.   Defendant's emergency EOs substantially interfere with Plaintiffs' Michigan constitutional rights.

128.   Defendant's EOs, acts, policies, and regulations further no compelling State interest.

129.  Defendants' EOs, acts, policies, and regulations fail to provide the least restrictive means of furthering any State interest and are not narrowly tailored.

130.  As a direct and proximate result of Defendants' violation of the Michigan Constitution, Plaintiffs have suffered, and will suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs request this Honorable Court:

A.    Issue a declaratory judgment that Defendant's EOs, acts, policies, and regulations in this case are unlawful and unconstitutional, and that Defendant violated Plaintiffs' fundamental constitutional rights for all the reasons stated in this Complaint;

B.    Issue a declaratory judgment that Defendant acted outside the scope of her lawful authority;

C.    Issue a declaratory judgment that the Emergency Powers Act and the Emergency Management Act are unconstitutional;

D.    Issue a permanent injunction to enjoin Defendant from enforcing her unlawful emergency EOs and from issuing any future unlawful EOs;

E.    Award Plaintiffs their reasonable attorney fees, costs, and expenses

pursuant to 42 U.S.C. § 1988 and other applicable law; and

F.     Grant such other and further relief as is just and appropriate.

**I HEREBY STATE AND AFFIRM THAT I HAVE HAD READ THE FOREGOING VERIFIED COMPLAINT AND THAT IT IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.**

DATED: May 6, 2020.             /s/ Keith Butler
Keith Butler, Bishop of Word of Faith Christian Center Church

DATED: May 6, 2020.             /s/ Keith Butler
                                Keith Butler, an Individual

DATED: May 6, 2020.             /s/ Tim Schmig
                                Tim Schmig, an Individual

DATED: May 6, 2020.             /s/ Chuck Vizthum
Chuck Vizthum, Pastor of Whole Life Church

DATED: May 6, 2020.             /s/ Chuck Vizthum
                                Chuck Vizthum, an Individual

DATED: May 6, 2020.             /s/ Stanley Chatfield, III
                                Stanley Chatfield, III, Pastor of Northern
                                Michigan Baptist Bible Church

DATED: May 6, 2020.             /s/ Stanley Chatfield, III
                                Stanley Chatfield, III, an Individual

Respectfully submitted,

**GREAT LAKES JUSTICE CENTER**

DATED: May 6, 2020          /s/ David A. Kallman

David A. Kallman          (P34200)
Attorney for Plaintiffs
5600 W. Mount Hope Hwy.
Lansing, MI 48917
517-322-3207

28